**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **DRC, Inc. et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   Case No. 1:04cv1499 |
| | ) |
| **CUSTER BATTLES, LLC, et al.** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

The matter is before the Court on the defendant Custer Battles, LLC's motions (i) for judgment as a matter of law, pursuant to Rule 50, Fed.R.Civ.P., and (ii) for a new trial pursuant to Rule 59, Fed.R.Civ.P.

**I.**

The jury in this case was tasked with resolving a dispute between plaintiff DRC, Inc. ("DRC") and defendant Custer Battles, LLC ("Custer Battles") that arose between the two parties in Iraq in July 2003. The primary dispute concerned the existence and terms of a subcontract in which Custer Battles had hired DRC to assist Custer Battles in its performance of a prime contract with the Coalition Provisional Authority ("CPA") to provide security and life support services for the Baghdad International Airport ("BIAP"). After DRC worked to build the BIAP camp throughout the month of July, Custer Battles terminated DRC claiming that DRC had breached the subcontract. Custer Battles also refused to pay DRC any amount for services DRC rendered prior to the termination.

DRC then brought suit against Custer Battles alleging chiefly the following: (1) breach of contract, (2) open account, (3) quantum meruit, (4) conversion, and (5) tortious interference.

According to DRC, Custer Battles breached two contracts, one for the lease of a camp at BIAP which would be built and staffed by DRC to provide life support services for Custer Battles' security personnel, and the other for the recruitment and lease of a team of former British Army Nepalese Gurkhas. The claims for open account and quantum meruit were based on services DRC provided in relation to the camp construction, including certain "punch-list" items and the construction of a security checkpoint outside BIAP. DRC's claim for conversion related to portable cabins in the camp that DRC alleged it owned and were converted by Custer Battles after DRC's termination. Finally, DRC alleged that Custer Battles tortiously interfered with DRC's contracts with the Gurkhas. In addition to these claims by DRC, Custer Battles counterclaimed against DRC alleging that the subcontract for building the camp was not a lease, but a "turnkey" contract, and that DRC had breached that contract by failing to provide adequate and timely performance and by allowing the fourteen year-old son of DRC's principal to come to BIAP.

After five days of trial, the jury returned a verdict finding: (1) in favor of DRC on one of its contract claims, but awarding no damages; (2) in favor of DRC on Custer Battles' contract claim; (3) in favor of DRC on its claim for open account and awarding damages in the amount of $130,443; (4) in favor of DRC on its claim for quantum meruit and awarding damages in the amount of $969,892; (5) in favor of Custer Battles on DRC's claim for conversion of the cabins; and (6) in favor of DRC on its claim of tortious interference and awarding damages of $300,761. Custer Battles challenges this verdict pursuant to Rules 50 and 59, Fed.R.Civ.P. as resting on legally insufficient evidence, or in the alternative, as manifestly against the weight of the evidence.

## II.

It is well-established that a motion for judgment as a matter of law will be granted only if

"there is no legally sufficient evidentiary basis" for the jury's verdict. *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996). Therefore, under Rule 50, Fed.R.Civ.P., a movant is entitled to judgment as a matter of law if, viewing the evidence in the light most favorable to the non-movant, "the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Id.* at 1249 (quoting *Bryan v. James E. Holmes Regional Medical Ctr.*, 33 F.3d 1318, 1333 (11th Cir.1994)). Furthermore, because federal courts are subject to the Seventh Amendment they are "compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them." *Id.* at 1250 (citing *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 99 (4th Cir. 1991)). Thus, if DRC can demonstrate evidence sufficient to support the jury's verdict, the verdict will be upheld.

Similarly, a motion for a new trial pursuant to Fed.R.Civ.P. 59 will be granted only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). Unlike a Rule 50 motion a Rule 59 motion requires district courts to "weigh the evidence and consider the credibility of the witnesses in order to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false." *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001). For the reasons set forth below, the application of these principles to the evidence adduced at trial conclusively establishes that the jury's verdict is based on sufficient evidence and is not contrary to the clear weight of the evidence.

*1. The Contract Claims and Claim for Tortious Interference with Contract*

Although the special verdict form listed only DRC's breach of contract claim and Custer

Battles' breach of contract counterclaim, the jury was, in effect, asked to pass on three different contracts: the contract for the lease of the camp as alleged by DRC, the contract for a turnkey camp as alleged by Custer Battles, and a contract for the recruitment of Gurkhas as alleged by DRC. The first contract was the contract for the lease of the camp from DRC by Custer Battles as alleged by DRC. The jury evidently found that this contract did not exist as described by DRC. This is apparent from the nature of the contract DRC alleged and from the essentially undisputed evidence of what occurred. Thus, under the lease agreement alleged by DRC, DRC was to own the camp's cabins and lease them to Custer Battles. This did not occur and indeed there was no persuasive evidence that the parties reached such an agreement. Thus, the jury did not find for DRC on its conversion claim, indicating that it did not believe DRC owned the cabins, and so it is likely that the jury did not believe that DRC and Custer Battles had reached an agreement whereby Custer Battles would lease the camp from DRC. Nor did the jury find for Custer Battles on its counterclaim, the second contract at issue. Custer Battles alleged that the parties had an agreement whereby DRC would provide a completed camp for a set price. By finding in favor of DRC on Custer Battles' counterclaim, the jury indicated that it did not find that the parties had the necessary "meeting of the minds" with respect to the contract for building the camp. *See Jones v. Peacock*, 267 Va. 16, 21, 591 S.E.2d 83, 87 (2004). As both parties presented evidence of contracts with mutually exclusive terms, the finding that there was no meeting of the minds with regard to the BIAP camp contract is supported by legally sufficient evidence and is not contrary to the clear weight of the evidence.

The third contract claim in issue stems from DRC's allegations that DRC and Custer Battles had agreed that DRC would recruit and then lease to Custer Battles the number of Gurkhas required to provide security for BIAP. The jury's verdict in favor or DRC on its contract claim evidently

relates to this contract.[1] At trial, DRC presented evidence that it had an oral agreement with Custer Battles whereby it would be reimbursed for its costs of recruitment and would also be paid a fee equivalent to 30% of the Gurkhas' total salary. DRC also presented evidence that it did not receive any of these payments despite the fact that it had recruited the Gurkhas, and that most of these Gurkhas remained employed by Custer Battles throughout the term of the alleged lease. This evidence was legally sufficient to support a finding for breach of contract. The curious aspect of the jury's verdict is that, although the jury found in favor of DRC, it awarded no damages. This apparent anomaly may be explained by the fact that the jury did award damages for DRC's related tortious interference claim, and presumably did not want to double count the damages stemming from the two claims based on the Gurkhas. Specifically, the jury evidently believed the evidence that Custer Battles had forced the Gurkhas to resign employment agreements with Custer Battles, an act which simultaneously breached Custer Battles' agreement with DRC, and interfered with DRC's contracts with the Gurkhas. Since the appropriate measure of damages for a tortious interference claim is the same amount as DRC's damages under the contract claim,[2] the jury simply allocated all the damages to the tortious interference claim. This conclusion is buttressed by the fact that the jury awarded $300,761 on the tortious interference claim, the same amount DRC had argued it was due under the breach of contract claim related to the Gurkhas. The jury's finding that DRC and Custer Battles had

---

[1] In this regard, the Court instructed the jury as follows:

> Ladies and gentlemen, it is the position of DRC that it could lose on the Custer Battles claim for turnkey, you find the turnkey but still find in favor of DRC on the Gurkhas. I leave it to you whether you that's appropriate on the basis of all the evidence and the instructions I've given you.

[2] *See Maximus, Inc. v. Lockheed Information Mgmt.*, 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997).

an agreement for the recruitment and lease of the Gurkhas and that this agreement was breached by Custer Battles was based on legally sufficient evidence and was not contrary to the clear weight of the evidence. Similarly, the jury's finding that Custer Battles tortiously interfered with DRC's contract with the Gurkhas is based on legally sufficient evidence and is not against the clear weight of the evidence. Furthermore, the jury's decision to award damages under the tortious interference claim and not the contract claim does not render the verdict defective.

*2. The Claim for Open Account*

The jury returned a verdict in favor of DRC on its open account claim and awarded damages of $130, 443. The instructions to the jury with respect to the open account claim were as follows:

> There's also a claim for open account by DRC, and a claim for open account applies when two parties have an agreement under which one will provide goods or services to the other as needed with many terms of the agreement unspecified. Under an open account, the party supplying the goods or services is to be paid for them. To prevail on its claim for open account, DRC must prove by the greater weight of the evidence, the existence of an agreement under which it would provide services as needed, as well as the value of the services for which it should be paid.

*See* To satisfy its burden, DRC presented testimony that Custer Battles had asked it to perform a number of tasks beyond the scope of the camp project*,* and that these tasks would be billed at cost plus 30 percent. Also submitted into evidence was a summary of the work orders DRC performed through the month of July 2003. The amount of damages awarded by the jury is nearly equivalent to the sum of the value of these work orders with the exclusion of a specific project for the building of a security checkpoint. Thus, the jury's verdict on DRC's claim for open account is supported by legally sufficient evidence and is not contrary to the clear weight of the evidence.

*3. The Claim for Quantum Meruit*

The jury found in favor of DRC on its claim for quantum meruit and awarded damages of $969,892. The jury instructions on DRC's claim for quantum meruit stated as follows:

> There's also a claim for quantum meruit. When a contract to pay for services rendered has been implied, then the defendant must pay the reasonable value of services. You may consider the nature of the work and the customary rate of pay.
>   In order to prevail on its claim for quantum meruit, DRC must prove the reasonable value of the services by the greater weight of the evidence. If DRC has failed to prove the existence of an implied contract by the greater weight of the evidence, or if DRC has failed to prove the reasonable value of the services by the greater weight of the evidence, you must find for Custer Battles on this claim.

*See Po River Water and Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 114, 495 S.E.2d 478, 482 (1998). As noted, the jury evidently did not find that either Custer Battles or DRC proved the existence of a contract for the construction of a camp, but the fact that there was no meeting of the minds with respect to the terms of the contract does not prevent the jury from finding the existence of an implied contract. *See Id.* ("To avoid unjust enrichment, equity will effect a 'contract implied in law,' requiring one who accepts and receives the services of another to make reasonable compensation for those services."). There was considerable evidence of the work performed by DRC throughout the month of July, including the testimony of several of DRC's employees responsible for the construction of the camp. With respect to the damages appropriately awarded under a theory of quantum meruit, the jury heard substantial testimony about the value of the work performed, including the fact that the CPA amended Custer Battles' original contract by increasing the contract value by $3.2 million for the construction of the camp and provision of life support services. The jury's finding of quantum meruit liability and its award of $969,892 is therefore supported by legally sufficient evidence and is not contrary to the clear weight of the evidence.

*4. The Adverse Inference*

Finally, Custer Battles is not entitled to a new trial due to the grant of DRC's motion for an adverse inference based on Custer Battles' former employee's refusal to testify. The former

employee, Joseph Morris, was the Chief Operating Officer for Custer Battles and exercised considerable authority with respect to the BIAP camp project. Allowing the jury to draw an adverse inference from his refusal to testify was therefore an appropriate remedy. *See, e.g., U.S. ex rel DRC, Inc. v. Custer Battles, LLC*, ___ F.Supp.2d ___, 2006 WL 335639, at *2 (E.D.Va. 2006) ("[A] district court may constitutionally permit a jury to draw an adverse inference from the refusal to testify on Fifth Amendment grounds by either a witness or party in a civil suit.").

Accordingly, and for good cause,

It is hereby **ORDERED** that defendant Custer Battles' motion for judgment as a matter of law pursuant to Rule 50, Fed.R.Civ.P. is **DENIED**.

It is further **ORDERED** that defendant Custer Battles' motion for a new trial pursuant to Rule 59, Fed.R.Civ.P. is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.


_____/s/_____
Alexandria, Virginia                                T.S. Ellis, III
March 28, 2006                                      United States District Judge